MISHLER v. CHICAGO, SOUTH BEND AND NORTHERN INDIANA RAILROAD COMPANY.

[No. 23,561. Filed April 3, 1919.]

1. APPEAL.—*Review.—Preservation of Grounds.*—Where appellant failed to present objections to an instruction in his motion for new trial, the instruction will not be reviewed on appeal. p. 191.

2. APPEAL.—*Review.—Motion for New Trial.—Grounds of Review.*—Where no question was presented by the appellant's motion for new trial, alleged error "in permitting a witness to testify as an expert" presents no question for review. p. 191.

3. APPEAL.—*Review.—Erroneous Instructions. — Reversible Error.*—Where an examination of the evidence and interrogatories set out in a brief makes it clear that the verdict is right, instructions would have to be very erroneous to present reversible error. p. 191.

4. CARRIERS.—*Existence of Relation of Passenger.—Instruction.*—In an action for injuries, where the complaint alleged that the plaintiff boarded the defendant's car at a regular stopping place, that the car was so crowded that he could not obtain a seat, and that the jolting and swaying of the car, due to rough and uneven tracks, threw him from the platform, an instruction as to whether the plaintiff could become a passenger if he boarded the car, or attempted to do so, while it was in motion and without the knowledge or consent of the defendant or its agents, was proper, in view of the jury's special verdict showing that only six persons were on the car, none of whom was on the platforms or in the aisles, and the plaintiff attempted to board the car at a place that was not a regular stopping place, and while it was in motion, and that he missed his footing and fell to his injury. p. 193.

5. CARRIERS.—*Duty to Prospective Passenger.—Boarding Moving Car.*—The defendant street car company owed the plaintiff

no duty as to the smoothness of its tracks over a railroad crossing while he was attempting to board a moving car, the crossing being a point where ordinary prudence would dictate that the car should be kept moving.   pp. 194, 197.

6. TRIAL.—*Instructions.—Construction as a Whole.—Degree of Care.*—Where, in a personal injury case, the instructions as a whole define the care that both the plaintiff and the defendant were required to exercise as that which an ordinarily prudent person would exercise under like circumstances, the giving of an instruction containing the expressions "ordinary prudence" and "the care which a 'prudent person' would exercise under like circumstances" was not reversible error.   p. 195.

7. APPEAL. — *Harmless Error. — Instructions.—Language.*—The verbal niceties and fine distinctions which analytical minds are able to make in the use of words are not to be invoked to hamper trial courts and to work reversals, when it is plain that a man of ordinary understanding would not be misled. p. 195.

8. APPEAL.—*Erroneous Instructions.—Harmless Error.*—An instruction, in a personal injury case, which told the jury that, though intoxication of the plaintiff would not of itself prevent a recovery, but that evidence of intoxication has a bearing on the question whether he exercised the care and caution required of him as a "sober man," was not prejudicial, where the jury was asked whether the plaintiff was intoxicated and answered, "Not sure."   p. 195.

From Kosciusko Circuit Court; *Francis E. Bowser,* Judge.

Action by John Mishler against the Chicago, South Bend and Northern Indiana Railroad Company. From a judgment for the defendant, the plaintiff appeals. (Transferred from the Appellate Court under §1394 Burns 1914, Acts 1901 p. 565.)   *Affirmed.*

*Rose & Symmes,* for appellant.

*Harry R. Wair, Perry L. Turner, Deahl & Deahl* and *W. D. Frazer,* for appellee.

TOWNSEND, J.—This was an action by appellant against appellee for personal injuries. A jury found for the appellee and with the general verdict returned answers to interrogatories. The questions presented arise on a motion for a new trial.

. Appellant's points in his brief are addressed to error in instructions Nos. 3, 7, 9, 12 and 13, given by the court and, to use the language of appellant's brief, "in permitting a witness to testify as an expert as to the condition of the tracks at the point in question." Appellant's motion for a new trial, as shown by his brief, did not present instruction No. 3 to the trial court. Therefore it cannot be reviewed here. Nor is any question raised on the evidence by appellant's motion for a new trial, so far as appears from the brief. Therefore he presents no question under his last point.

Instructions Nos. 7, 9, 12 and 13 were presented for review to the trial court by the motion for a new trial, and appellant's brief shows an exception to the court's ruling on this motion; but it does not show any exception to the giving of the instructions. Contrary to our custom, we have looked at the transcript and found exceptions saved. We would not have done this in the first instance, because an examination of the evidence and interrogatories set out in the briefs makes it clear that the verdict is right. Hence instructions would have to be very erroneous to cause a reversal. But these instructions have been considered by the Appellate Court in its opinion. Therefore we shall examine them. In order to make this discussion understandable, it will be necessary to take a cursory view of some of the evidence, some of the answers to interrogatories and the allegations of the complaint.

Appellee's street car track is on Main street, a north and south street of the city of Elkhart, and crosses six tracks of the Lake Shore and Michigan Southern Railway Company. The north two are called the old tracks, the next two the new tracks, or Air Line, the next two are freight tracks. About seven or eight feet north of the north rail of the old tracks are gates to stop the

street traffic, and the same distance south of the south rail of the freight tracks are gates for the same purpose. The distance between the north gates and the south gates is approximately 107 feet. These six tracks of the Lake Shore cross the street at an angle north of west and south of east. Street cars going south stop about one-half car length north of the north gates and receive and discharge passengers at this point. The distance from this point to the north rail of the fourth Lake Shore track is between sixty and sixty-five feet. The particular car that appellant attempted to board was going south and made this stop at the north of the gates, the conductor going ahead on the east side of the street to a signal which is located between the old and the new tracks. All of the evidence shows that appellant attempted to board this car while it was passing over the crossing between these gates. The evidence shows, and the jury found by answers to interrogatories, that the car was going four miles an hour over the crossing. The evidence shows, and the jury found by special interrogatory, that appellant attempted to board the car at or near the fourth track from the north, and that he attempted to go onto the front end of the car from the west side; that he caught at the handrail, missed his footing on the step, and fell, the trucks of the car passing over his right leg and left foot. The evidence shows that no one was on the front platform of the car except the motorman; that the motorman had no knowledge of appellant's presence except that he caught a glimpse of his body as he grabbed at the car and fell. At about the moment of appellant's fall, the conductor came from the signal post heretofore mentioned, on the east side of the car, and boarded the rear platform of the car while it was moving four miles an hour, and signaled the motorman that he was on the car, and, at that instant, saw for the first time

appellant's body at the side of and under the rear platform of the car.

The complaint alleges that appellant became a passenger at a regular stopping place just north of the crossing, as the car was starting over the crossing; that the car was crowded, and it was impossible for him to obtain a seat; that the aisles of said car were also crowded; that appellant was standing on the front step of the car and was in the act of stepping on the front platform when the car began to jolt, because of the rough and uneven condition of the tracks over the crossing; that the jolting and swaying of said car was increased by the excessive rate of its speed; that because of the jolting and swaying of the car and unevenness of the track he was thrown off.   The jury found by special interrogatory that there were no more than six persons in the car; that nobody was in the aisles or on the platforms; that appellant attempted to board the car, as we have heretofore said, at or near the fourth track south from the north gates; that in attempting to get on the car he missed his hold with his right hand; that he missed his footing on the step and fell.

In the light of this situation, appellant complains of the following instruction:   (7)   "To become a passenger upon the street car, it was not necessary that the plaintiff had actually boarded the car, bought a ticket, paid his fare, or offered to do so, but it would be sufficient to make him a passenger if he was at a regular stop or station of said car and was in the act of boarding the same with the intention of taking passage thereon, and if in so doing he was injured because of the carelessness and negligence of the company, and without any carelessness or negligence on his part proximately contributing thereto, the defendant would be liable.   If you find, however, that

the plaintiff got on the step of said car or attempted to do so at a place not a regular or proper stopping place, while the car was in motion, and without the knowledge or consent of the defendant, or of the employes in charge of said car, he could not thus become a passenger of the defendant company, and if while on said step or in attempting to board said car he was jolted or jarred therefrom by the action of said car and thereby injured, the defendant could not be liable therefor in this action."

Appellant says in his brief that there was a sharp conflict in the evidence in this case on every issue; but we have searched in vain to find any conflict in the evidence on the proposition that appellant attempted to board a moving car at a time when it had passed the north gates and was proceeding over the Lake Shore crossing. If appellant means that there is a sharp conflict in the evidence as to the condition of this crossing, as to its being rough or smooth, that question is wholly immaterial unless and until appellant became a passenger on the car. Appellee owed him no duty as to the smoothness of this crossing while he was attempting to board a moving car not at a stopping point or near a stopping point, but at a point where the car could not stop, and from the very nature of the situation ordinary prudence would dictate that it should be kept moving. The testimony all is, even his own testimony, that he was attempting to board this car while it was going over this crossing. The jury specially found that he did attempt to board it between the third and fourth tracks south of the north gates, and the evidence showed that his reaching for the handrails on the car, and his attempt to put his feet on the step, and his fall, were all one act. In the light of this situation, it cannot be said that the jury misunderstood instruction No. 7, or was in any way misled by it into

the idea that, had he succeeded in getting on the car, he could not have become a passenger. What the instruction means and what the jury must have understood by it was that in his attempt to board a moving car, under circumstances like these, he was employing his own method and taking his own chances, and unless and until he succeeded, appellee, without knowledge of his attempt, owed him no duty. Instructions are for the guidance of a jury of ordinary men, and this instruction, under the circumstances of this case, was a proper instruction.

Appellant complains of the court's instruction No. 9, because it uses the expression "ordinary prudence" and the care which a "prudent person" would exercise under the circumstances. The instructions, as a whole, define the care that both the appellant and the appellee were required to exercise as being that which an ordinarily prudent person would exercise in like circumstances. They correctly told the jury what care was required and did not mislead the jury. In fact, the instructions on this subject were more favorable to appellant in some particulars than he deserved. The verbal niceties and fine distinctions which analytical minds are capable of making in the use of words are not to be invoked to hamper trial courts, and to work reversals in this court, when it is plain that a man of ordinary understanding would not be misled.

Appellant next complains of instruction No. 12, which is as follows: "Some evidence has been introduced concerning the plaintiff's condition as to sobriety at the time of his injury. The fact of his intoxication at the time of his injury, if it is a fact, would not of itself prevent his recovery, but that evidence is before you as bearing upon the question whether he exercised the care and caution required of him as a

sober man and in full possession of his faculties and as described in the foregoing instructions. If you find that he was so under the influence of liquor at the time as to render it dangerous, by reason thereof, for him to attempt to board said car, and that he was injured by reason thereof, he could not recover."

It will be conceded that the words "sober man" do not indicate a legal degree of care; that is to say, the care exercised by an ordinarily prudent person in like circumstances. But it will be observed that there is coupled with this, "and as described in the foregoing instructions." The foregoing instructions had told the jury that appellant was only required to use the care that an ordinarily prudent person would use in like circumstances; and in this very instruction itself the jury are told that intoxication would not prevent a recovery. But beyond all this, the jury were asked by a special interrogatory whether appellant was intoxicated, and they answered: "Not sure." So, whatever view may be taken of this instruction, appellant was not harmed by it.

Instruction No. 13 practically set out the situation at this crossing and told the jury that if they found that there were six tracks in three pairs; that trains were running over these tracks; that safety gates were there; that appellee had no stopping place between said gates on said crossing, and after detailing the situation as to the crossing, it then told the jury that appellant had no right whatever to board appellee's car while in motion in the act of running over said crossing between said safety gates, and that they should consider said facts, if the same were established by the evidence, in determining whether the appellant was guilty of contributory negligence in attempting to board the car.

The complaint about this instruction is that it omits the element of the condition of appellee's tracks over

this crossing.   In the light of what we have here-
5.   tofore set out in this opinion, it would appear
that appellee owed appellant no duty as to the
condition of its tracks at this crossing while appellant
was taking chances in boarding a running car on this
crossing inside the gates where there was no stopping
place to receive passengers.   The interrogatories and
the evidence show, as we have heretofore indicated, that
appellant never was a passenger on this car.

Considering the circumstances of this case as shown
by the evidence and shown by the answers of the jury
to special interrogatories, it is difficult to conceive how
instructions could be erroneous enough to work a re-
versal of the cause.

The judgment of the trial court is therefore affirmed.

NOTE.—Reported in 122 N. E. 657.   Carriers: when intending
passenger actually becomes such, 1 Ann. Cas. 605, 9 Ann. Cas.
1104, Ann. Cas. 1917C 1206.   See under (2) 14 Ann. Cas. 973;
(4) 10 C. J. 1089; (5) C. J. 945.