UNION TRACTION COMPANY OF INDIANA v. VATCHET.

[No. 23,601.    Filed November 2, 1921.]

1. STREET RAILROADS.—*Crossing Accidents.*—*Last Clear Chance Doctrine.*— *Applicability.*— Where plaintiff, while riding a motorcycle, was struck by defendant's freight car at a street intersection, and the evidence showed that both plaintiff and defendant's motorman had an unobstructed view, as the motorman and car ran toward the crossing, but that the motorman did not actually see plaintiff nor have actual knowledge that he was in danger until just as the rear part of the car struck the motorcycle, *held* that the doctrine of last clear chance was inapplicable.    p. 325.

2. STREET RAILROADS.—*Last Clear Chance.*—*Instructions.*—The last clear chance contemplates a peril of which the motorman knows, and knowing can avoid by due care, and an instruction that it was applicable to a case of negligence in failing to look and know was erroneous.    p. 325.

From Shelby Circuit Court; *Alonzo Blair,* Judge.

Action by Francis L. Vatchet, by next friend, against the Union Traction Company of Indiana. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*J. A. Van Osdol, Frederick C. Matson, Ralph K. Kane, James A. Ross, Robert D. McCord* and *Adolph A. Schreiber,* for appellant.

*Reginald H. Sullivan, Wray & Sullivan* and *Ryan, Ruckelshaus & Ryan,* for appellee.

EWBANK, J.—The appellant sued the appellee for personal injuries sustained when he was struck by one of appellant's interurban freight-cars in Martindale avenue, near Seventeenth street, in the city of Indianapolis. Appellee was riding a motorcycle east on Seventeenth street when he saw a freight-car coming south in Martindale avenue, and turned his motorcycle south into that avenue, but collided with some part of the car near the rear end.    Issue was joined upon the complaint and an answer of denial, and the cause was submitted for

trial to a jury which returned a verdict in favor of the appellee, upon which judgment was rendered. A motion by appellant for a new trial, for the alleged reason, among others, that the court erred in giving to the jury the instruction No. 29, was overruled, and the appellant excepted, and duly filed its bill of exceptions within the time allowed by the court, and perfected an appeal. The only alleged error not waived is overruling the motion for a new trial, and the only specification thereunder not waived is giving instruction No. 29.

Instruction No. 28, given by the court, stated that it was the theory of the second paragraph of appellee's complaint, among other things, that appellant's motorman, by the exercise of reasonable care and diligence, could have seen the appellee at all times after the car had reached a point 150 feet north of where appellee was in Seventeenth street, when appellee was twenty-five or thirty feet west of the track, and that appellee was in full view of the motorman while appellee was traveling more than forty feet before the collision, and that appellant, by its employes saw, and by the exercise of reasonable care and diligence could have seen appellee approaching the car track on the crossing when the car was far enough away from the crossing to have stopped it or slowed it down, by the exercise of ordinary care and diligence, and thus to have avoided the collision and resulting injury.

Instruction No. 29 (our italics) was given as follows: "29. Under this theory it becomes the duty of the court to instruct you on the doctrine known in law as the law of *last clear chance,* which means this: Notwithstanding the plaintiff may have been negligent in going in dangerous proximity to defendant's railroad track, upon which there was an approaching car and thereby placed

himself in a perilous position, and that when he discovered his perilous position, he used diligence and his best endeavors and efforts to extricate himself, and that while in such perilous position defendant's motorman saw the plaintiff in said perilous situation, if he were in a perilous situation from which he could not extricate himself, then it was the duty of such motorman to have used ordinary care and diligence to avoid coming in contact with him and his motorcycle and to avoid injury to him; or if, under the circumstances and facts above stated, by the exercise of ordinary care and diligence said motorman *could have seen* the plaintiff approaching the said crossing, if he was so approaching the same, and *could have seen and realized* that plaintiff was in peril from which he was unable to extricate himself, if such were the case, in time to have avoided such contact and injury, by the exercise of ordinary diligence, if there was contact and injury, and that said motorman carelessly and negligently *failed to look and see* the plaintiff so approaching and *failed,* under the circumstances, *to see plaintiff and his perilous situation,* if he was in a perilous situation, such conduct on the part of such motorman *in failing to see* plaintiff and his said perilous situation would be negligence on the part of said motorman in the discharge of his duties toward plaintiff in failing to do what he could have done by the exercise of reasonable care. And in such case, if you find from the evidence that the motorman's negligence was negligence at a later time than the negligence of the plaintiff, if plaintiff was negligent, such later negligence by the motorman is in law held to be the proximate cause of the injury, and the prior negligence of the plaintiff is held to be a remote cause only, and for a remote cause, is not chargeable.

"If however, under the circumstances above named, the motorman could not, by the exercise of reasonable

care, have avoided injuring plaintiff, then the doctrine of *last clear chance* will not apply." This was erroneous. *Terre Haute, etc., Traction Co.* v. *Stevenson* (1919), 189 Ind. 100, 123 N. E. 785, 127 N. E. 3.

The undisputed evidence, together with that part of the controverted evidence tending to support the allegations of the complaint which was most favorable to the appellee, was as follows:

Martindale avenue extended north and south, and was 100 feet wide between property lines, with a five foot sidewalk next to the west line, a grass plot nineteen and one-half feet wide next to the sidewalk, and a roadway fifty feet wide between curbs; a double track street railway was in the middle of the street, and it was seventeen feet and nine inches from the west rail to the west curb; the avenue was not paved except where Seventeenth street crosses; a line of houses on the west side stood sixteen feet west of the property line; a dead cherry tree stood on the lawn at the northwest corner, and one dead and two living poplar trees stood in the grass plot in front of the first, second and third lots north; it was six or eight feet to the first limbs of the cherry tree, and twelve feet to the first limbs of the poplar trees; the trees were not bushy, but the branches extended upward at an angle of forty-five degrees. These trees were from twelve to eighteen inches in diameter; Martindale avenue is straight and the houses stand the same distance back for 2,000 feet north; Seventeenth street, fifty feet wide, with a roadway twenty-four feet between curbs, paved with brick, with cement walks five feet wide next to the curbs, extended east and west across Martindale; appellee rode a motorcycle east in Seventeenth street near the south curb at the rate of ten or twelve miles an hour until he was within ten or twelve feet of the west car track, when he looked north and saw a freight-car operated by appellant

seventy-five to eighty-five feet distant, approaching at a rate of speed three or four times as fast as his motorcycle was running; thinking he did not have time to cross, he put on the brake, dropped his right foot to the ground, and turned south into Martindale avenue; as the motorcycle turned, the rear part of the car struck the rear wheel of the motorcycle and threw appellee's right foot under the rear wheel of the freight car. Appellee did not testify that he saw the motorman at all, and his only witness who did testify to seeing him was waiting at the southwest corner of the two streets, and stated that the motorman was in the front end of the car, looking ahead as the car crossed Seventeenth street, and he did not think he saw appellee; while appellant's conductor testified that after the front end of the freight car had "very nearly crossed Seventeenth street" he looked west out of the side door and for the first time saw appellee forty feet west of them, coming east very fast, that forty feet of the freight car was then behind witness, and that he watched appellee from the side door until his motorcycle struck the rear end of the car. And appellant's motorman testified that he did not see appellee until the front end of his car was three-fourths of the way across the paved part of Seventeenth street, when he looked out of the side door and saw a motorcycle coming east on Seventeenth street, about even with the front of the house on the corner (which would be over fifty feet away). There was also much evidence tending to prove that appellee was going as fast as the car, and was guilty of contributory negligence.

We quote the language of a recent decision of this court on the subject of the last clear chance, which is supported by an exhaustive citation of authorities, and which meets with our approval as applied to the facts of the case at bar: "The traveler's peril known to the

.motorman creates a special duty to take advantage of his chance, if he have a chance. * * * No special duty to use due care in favor of a particular party arises without actual notice of the particular party's peril. A general duty exists, in the absence of such actual knowledge, to use due care for the protection generally of parties who may or may not be in danger at crossings, but are not known to be in danger, and contributory negligence is a defense when this general, and not a specific duty of the motorman is violated. * * * The last clear chance contemplates a peril which the motorman knowing can avoid by due care. * * * The failure of the motorman to perform the special duty raised by his knowledge of the peril, and by his opportunity, is the actionable cause. The better holding, indeed the holding that in recent years has been most frequently announced, is that it is a negligent failure to avoid a discovered peril that makes applicable the rule of last clear chance." *Terre Haute, etc., Traction Co.* v. *Stevenson, supra.*

Counsel for the appellee invoke the rule which has been applied when a person was helpless, in a place of danger, where it was the duty of the motorman to keep a lookout ahead, as where a traveler's foot had become fastened between the planking and the rail at a crossing, or the vehicle in which he was riding had become stalled on the track, at a crossing, so that he was unable to extricate himself, and the motorman would have known of his situation in time to stop and avoid injuring him, if the duty to keep a lookout ahead were performed. "Under such circumstances, the negligence of the plaintiff is deemed to cease at and after the time he reaches a situation where due care on his part would be unavailing, and the special duty of the defendant to such person immediately arises, and, if negligence on the part of the defendant then intervenes, or, if, after

that time, the defendant, by the exercise of due care could prevent the injury and fails to do so, such subsequent negligence on the part of the defendant is treated as the sole proximate cause. The rule of law applicable to cases involving circumstances of this character, is sometimes referred to as the rule of antecedent and subsequent negligence." *Indianapolis Traction, etc., Co. v. Croly* (1911), 54 Ind. App. 566, 96 N. E. 973, 98 N. E. 1091.

Counsel for the appellee also invoke the rule which was applied where a street railway had opened a passage through deep snow along its tracks in the middle of the street by throwing the snow out to either side, and the snow was so deep that the way thus opened afforded the only means of passing, and a street car which approached from behind, without giving any warning, ran down and killed a woman who was walking along the track, although the motorman's view of her was unobstructed while his car ran a thousand feet, and her back was toward him all that time. The decision of the latter case did not rest upon the doctrine of last clear chance or of antecedent and subsequent negligence, but upon the proposition that the woman had a right to travel in the middle of the street under the circumstances and to rely upon being warned before a street car was run upon her.

Neither does the evidence in the instant case tend to bring it within the rule applicable to antecedent and subsequent negligence, as above recited. The first house north of Seventeenth street, on the west side of Martindale avenue, was more than fifty-eight feet from the street railway track. Martindale avenue was 100 feet wide and straight, and as free from obstructions to appellee's view of the approaching car as it was of obstructions to the motorman's view of him. Appellee as well as the motorman was facing the crossing. He

was not upon the track ahead of the car, but was approaching it from a side street. A wide roadway in Martindale avenue led toward the south, into which the appellee actually turned. His motorcycle did not cease moving until the instant of contact, and then collided with the rear part of the car. If any negligence of the appellee contributed to cause the injury, its effect was not shown to have ceased long enough before the motorman passed over the crossing to charge him with a duty to discover appellee's peril in time to stop a car running thirty-five or forty miles an hour before it should reach the point of collision.

Neither would an instruction on the doctrine of antecedent and subsequent negligence, as distinguished from the doctrine of the last clear chance, be applicable to the issues joined by an answer of denial to the second paragraph of the complaint, as recited in the other instruction referred to. The second paragraph of the complaint, referred to in the instruction immediately preceding the one complained of, alleged that appellant operated a system of interurban railroads upon certain tracks in Martindale avenue; that said tracks extended north and south in said avenue across Seventeenth street, which runs east and west; that appellee rode his motorcycle east along Seventeenth street at a speed not exceeding ten or twelve miles an hour, and when forty feet from the car tracks looked north upon Martindale avenue, but that no car was then in sight; that he continued east until within ten or fifteen feet of the crossing, when he saw appellant's interurban freight car coming rapidly toward him; that he turned south into Martindale avenue as short as he could, but after he had run south twenty feet from the point where he began to turn, the car ran past him at the rate of forty miles an hour, and the rear part of the car struck the motorcycle and thereby caused the injury complained

of. And after charging that the car was negligently run without giving any warning of its approach by whistle, bell or gong, or otherwise, it alleged that when appellee first saw the car and turned south it was forty or fifty feet north of Seventeenth street, but was coming so fast that appellee was frightened, and that he then attempted to escape, but that his motorcycle was struck by the rear part of the car. It further alleged that the motorman could have seen appellee from the time when appellee was thirty feet west of the track and the car was 150 feet north of him, and from that time until the time of the collision, and could have seen him when the car was far enough away from the crossing, so that the motorman, by the exercise of ordinary care and diligence could have stopped the car or slowed it down, and could thereby have avoided injuring appellee. It also alleged that appellee did not see or hear the car, but did not state that this fact was known to defendant or its motorman.

Neither the complaint nor the evidence made out a case where the motorman might have seen appellee on the track, unable to extricate himself from danger or obviously unconscious of danger, as the car approached. He was not on the track at any time, until his foot was thrust upon the rail under a rear wheel of the car, an instant after the collision occurred. And under the averments of the complaint it does not appear that there was any reason why the motorman, even if he had seen appellee in Seventeenth street thirty feet west of the track, riding east at the rate of ten or twelve miles an hour, should have apprehended that he would not stop, or turn either north or south in Martindale avenue, which, it would appear he could have done with safety, until he was within ten feet of the track. If we accept appellee's contention that his motorcycle did not skid, and that the rear wheel was struck by the car after the

front wheel had turned away from the track, it would seem that the accident might have been averted if the motorcycle had begun to turn south even a few inches sooner than it did.

The many cases cited by counsel where the motorman or engineer had actual knowledge of the situation and danger of a person upon or approaching the track do not tend to support an instruction defining the "last clear chance" as embracing a case where the motorman "could have seen," but "negligently failed to see" the plaintiff and his peril.

That the motorman and the driver of the motorcycle, both approaching a crossing, might have seen each other if they had looked, while the motorcycle ran a certain distance towards the crossing, imposed upon the motorman no greater duty to look than it imposed upon the driver of the motorcycle. And if neither looked, but both were guilty of negligence which contributed to cause the injury, in that both drove heedlessly on until a collision was unavoidable, and the motorman did not look at all, and did not know that the driver of the motorcycle was in danger until he was injured, any efforts which the driver made to stop his motorcycle or to turn aside after he was so close that the speed at which he was riding carried him against the rear end of the car could not give him the rights which might have been accorded to a person who was lying helpless upon the track at the crossing.

The judgment is reversed, with directions to sustain appellant's motion for a new trial.

Myers, J., absent.