ENGLE v. CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

[No. 24,372. Filed November 25, 1925. Rehearing denied February 16, 1926.]

1. RAILROADS.—*Instructions that if defendant's servants, by the exercise of ordinary diligence, "could have discovered" plaintiff's plight in time to have avoided injury, defendant would be liable under doctrine of "last clear chance" were incorrect and properly refused.*—In an action for damages for the destruction of plaintiff's automobile by defendant's train at a crossing, instructions that if the defendant's engineer or flagman, "by the exercise of ordinary diligence, could have discovered" plaintiff's plight (automobile stalled on the crossing) and "could have known" that plaintiff was unable to get it off the crossing out of the way of the approaching train in time to have stopped the train, then defendant was liable under the doctrine of "last clear chance" regardless of the contributory negligence of the plaintiff, were incorrect and properly refused. p. 269.

2. NEGLIGENCE.—*In this state, actual knowledge is necessary to bring a case within the doctrine of "last clear chance," and the fact that, by the exercise of diligence, the injured party's peril might have been discovered will not bring the case within that doctrine.*—The rule is firmly established in this state that actual knowledge is necessary to bring a case within the doctrine of "last clear chance," and the mere fact that, by the use of ordinary diligence, the peril of the injured party might have been known to the one who inflicted the injury does not bring a case within that doctrine. p. 269.

3. NEGLIGENCE.—*In action for damages to property resulting from defendant's negligence which is not within doctrine of "last clear chance," plaintiff must allege and prove freedom from contributory negligence.*—In an action for damages to property by reason of the negligence of the defendant which was not within the doctrine of "last clear chance," the plaintiff must allege and prove his freedom from contributory negligence. p. 269.

4. RAILROADS.—*Instruction as to plaintiff's accountability in an emergency when automobile stalled on tracks at a crossing and train approaching held properly refused.*—In an action for damages to an automobile struck by a train at a crossing, an instruction that, if plaintiff, without his own fault or negligence, was on the railroad track with his automobile in danger

from an approaching train, he "would not be held to strict accountability for his conduct and action in attempting to extricate such automobile" was properly refused, as it would not aid the jury in applying the law to the facts.   p. 271.

5.   APPEAL.—*Judgment will not be reversed for error in instructions when it affirmatively appears that appellant was not prejudiced thereby.*—A judgment will not be reversed because of instructions given when it affirmatively appears that they did not prejudice the rights of appellant.   p. 271.

From the Delaware Circuit Court; *W. A. Thompson,* Judge.

Action by James S. Engle against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for defendant, the plaintiff appeals.   *Affirmed.*

*W. G. Parry, Leffler & Ball* and *F. S. Caldwell,* for appellant.

*Frank L. Littleton, Bales & Macy* and *Orr & Clark,* ·for appellee.

EWBANK, J.—Appellant, as plaintiff below, sued for damages caused by a locomotive drawing a freight train over the tracks of appellee (defendant below) across Union street in the city of Winchester, Indiana, striking and injuring his automobile when it was stalled on the crossing.   A former trial had resulted in a verdict in favor of the defendant, with answers to thirty-seven interrogatories, after which a new trial was granted, and a change of venue taken.   A second trial also resulted in a general verdict in favor of the defendant, with which the jury returned answers to fifty-seven interrogatories.   Overruling the motion for a new trial is assigned as error, under which, appellant specifies the giving of each of five instructions, and the refusal to give each of six others.

The first and third paragraphs of the complaint proceeded upon the theory of the "last clear chance," the

first paragraph counting upon the alleged negligence of the engineer in charge of defendant's locomotive after he had knowledge of the helpless condition of plaintiff and his inability to move the automobile off the track in time to avoid being struck by the approaching train, and the third paragraph alleging that defendant's flagman at the crossing negligently failed to signal the engineer to stop his train after he had knowledge of such condition. The second paragraph of the complaint proceeded on the theory that the flagman at the crossing negligently signaled the plaintiff to come forward and pass over the crossing when a train was approaching so near thereto that plaintiff did not have time to get across in safety, though he was without fault or negligence on his part. But since it is not contended that there was evidence tending to prove the cause of action alleged in the second paragraph, and since the jury found by its answers to interrogatories that at the time the signal to cross was given by the watchman, defendant's locomotive was 1,000 feet away, approaching at the rate of twelve miles an hour, and that there was sufficient time thereafter in which plaintiff and his automobile could have passed safely over the tracks ahead of the train, if the clutch of his car had been in proper working order, we shall not further consider his alleged right of action under that paragraph.

The first paragraph of the complaint alleged, in substance, that while defendant was operating a freight train drawn by a locomotive engine from west to east upon its railroad toward the crossing over Union street in the city of Winchester, Indiana, plaintiff was riding in and driving an automobile which he owned upon and along Union street from north to south with the intent and purpose of crossing said defendant's railroad track; that defendant kept a watchman at said crossing to

warn travelers on the street of approaching trains or locomotives; that, as plaintiff approached the crossing, he discovered a locomotive and train of cars to the west of the crossing on defendant's railroad, but could not see whether or not it was approaching the crossing, and stopped his automobile and looked and listened to determine whether it was safe to cross at that time; that the flagman then motioned for plaintiff to drive across the railroad track, and in obedience to such direction, he started his automobile forward in low gear, and proceeded slowly until it reached the main track of defendant's railroad, when it stopped with the fore wheels of the automobile between the rails of the track, and plaintiff was unable to move it either forward or backward off the crossing; that, while he was thus situated, defendant's locomotive drawing the freight train was approaching slowly from the west, and the engineer and those in control of the train discovered and knew of said situation of plaintiff's automobile on the crossing, and discovered and knew of his inability to move it forward or backward off the crossing, and knew of said perilous situation in time to have stopped the train in its approach to the crossing and to have avoided contact with said automobile if the engineer and those in charge of the train had used diligence to stop it; but that after they had so discovered and knew of said condition, and of the perilous situation of the automobile, and of plaintiff's inability to remove it from the track, defendant's engineer and persons in charge of said locomotive and train of cars negligently ran the same against, upon and over the automobile, and thereby destroyed it; that said automobile was of the value of $1,000 and was the property of plaintiff, and he was thereby damaged, etc. The third paragraph of the complaint alleged substantially the same facts as to the manner in which the automobile was driven to and

stalled upon the track, and was struck and destroyed by defendant's locomotive and train, and as to its ownership and value; but instead of alleging that the engineer and persons in charge of the locomotive and train saw and knew of the perilous position of the automobile and the inability to remove it from the track, the third paragraph alleged that the flagman at the crossing discovered and knew such conditions, and knew of plaintiff's inability to put his car in motion and to extricate himself and the car from its position on the railroad track, in time to avoid contact with the locomotive and train by signaling the locomotive engineer to stop said locomotive and train before they reached the crossing; but that the flagman, with such knowledge, negligently failed and refused to signal the engineer and those in charge and control of the locomotive and train to stop, or to give any notice of plaintiff's said helpless condition, although it is alleged that he had ample time in which to have done so and thereby to have prevented an injury.

The series of answers to interrogatories returned with the second verdict found the facts as to the operation of the railroad train and the automobile, and the injury to the automobile, substantially as they were alleged in the complaint, but on the questions of negligence of the defendant's servants and contributory negligence of plaintiff, they found as follows: That plaintiff stopped his automobile and disengaged the clutch, about forty feet north of defendant's main track; that from this point to the track the street ran slightly upgrade, the railroad track being three to five feet above the level of Union street; that, after stopping his automobile, plaintiff heard the train approaching from the west on defendant's main track about 1,000 feet away; that defendant's flagman then signaled to plaintiff to cross over the railroad ahead of said

train; that plaintiff then started his automobile by engaging the clutch with the engine thereof, and drove toward the crossing, but the clutch was in such a condition that it slipped, and the automobile did not move readily with the engine; that the plaintiff, as he drove toward the track, knew that the clutch of his automobile was not working properly but was slipping, and that the automobile was not moving with the engine, but that the flagman did not know said facts; that said failure of the clutch to hold reduced the speed of the automobile; that by reason of the defective condition of the clutch, the automobile stopped on defendant's main track when the front end of the engine drawing the freight train was about 500 feet distant; that such stopping of the automobile was due solely to the defective condition of the automobile and plaintiff's operation of same, and, by reason of the defective clutch, plaintiff was unable to move the automobile either forward or backward off the railroad track; that there was sufficient time after the automobile reached the track at the crossing in which it could have crossed in safety ahead of the freight train if the automobile had been in proper working condition; that the engineer could have seen the automobile as it stopped on the railroad track by the use of ordinary diligence, but he did not see it until the front end of the locomotive engine was about 150 feet from it; that when defendant's engineer first saw and learned that plaintiff's automobile had stopped on the track upon which his train was approaching, he immediately reversed the engine and put on the air brakes of his train and used sand on the track, and did everything he could do for the purpose of stopping the train; that the train was running about twelve miles an hour when the engineer first learned that the automobile was on the crossing, and its speed had decreased to about three miles an hour

when the locomotive struck the automobile, and after striking it, the train ran about seventy feet; that there were forty-six or forty-seven cars and the locomotive in the train; that, after his automobile stopped on the track, plaintiff did not make any effort to remove it therefrom by any other means than its own power, and did not make any signal to those in control of the approaching train; that, after the automobile had stopped on the track, plaintiff told the watchman he thought he could back it off, and the watchman had no other information on the subject and did not know it was impossible to remove the automobile from the track by its own power until plaintiff got out of his car, at which time, the locomotive was about 150 feet away; and that the flagman could not have caused the approaching train to be stopped before it struck the automobile by any signal he might have made after he knew it could not be thus removed. It also appears from the record that, in answer to interrogatories returned with the verdict at the first trial, the jury found substantially the same facts which were found in answer to interrogatories at the second trial, except they did not find that the plaintiff and the watchman knew the train was coming when plaintiff started to drive upon the crossing, nor find that plaintiff did not try to move the car off the crossing otherwise than by its own power. An examination of the evidence incorporated in the record by a bill of exceptions shows that all of the answers returned with the verdict at the second trial are fairly supported by competent evidence.

Of the six instructions refused, five contained charges to the effect that if defendant's engineer or its flagman, "by the exercise of ordinary diligence could 1-3. have discovered" the plight of plaintiff's automobile on the crossing, and "could have known" that plaintiff was unable to get it off, out of the way

of the approaching engine and train, in time to have stopped the train and thus to have prevented the injury, then defendant was liable in damages, without reference to any contributory negligence of which plaintiff may have been guilty in driving the defective car upon the railroad track, stalling it there, and failing to get out and push it off after he knew the clutch was not holding.   These instructions were properly refused. Knowledge on the part of one person of a threatened peril from which another cannot extricate himself, or his property, may sometimes impose a special duty to use care, for the violation of which such other party can recover damages, although he would not have encountered the danger except for negligence on his own part.   But the rule is firmly established in Indiana that such knowledge is necessary to bring a case within the doctrine of the "last clear chance"; and the mere fact that by the use of ordinary care and diligence the peril might have been known to the person who inflicted the injury does not bring a case within that doctrine so as to relieve the owner of property negligently damaged from the burden of showing that his own negligence was not a contributing cause. *Terre Haute, etc., Traction Co.* v. *Stevenson* (1919), 189 Ind. 100, 106, 123 N. E. 785; *Union Traction Co.* v. *Vatchet* (1921), 191 Ind. 324, 327, 328, 329, 132 N. E. 591.   For, in an action to recover damages to property because of negligence not within the doctrine of the "last clear chance," the plaintiff must allege and prove his own freedom from contributory negligence. *Cleveland, etc., R. Co.* v. *Tauer* (1911), 176 Ind. 621, 631, 96 N. E. 758, 39 L. R. A. (N. S.) 20; *Fort Wayne, etc., Trac. Co.* v. *Monroeville, etc., Tel. Co.* (1912), 179 Ind. 334, 336, 100 N. E. 69; *Standard Brewery Co.* v. *Musulin* (1920), 189 Ind. 231, 234, 125 N. E. 71.

Engle *v*. Cleveland, etc., R. Co.—197 Ind. 263.

An instruction that if plaintiff, without his own fault or negligence, was on the railroad track with his automobile in danger from an approaching train, he 4. "would not be held to strict accountability for his conduct and action in attempting to extricate such automobile" was properly refused. Such declaration of an abstract general proposition divorced from the facts to which it referred could not aid the jury in applying the law to the specific facts shown by the evidence concerning what plaintiff actually did and the circumstances under which it was done in the case on trial.

Some expressions in the instructions given by the court with relation to what acts or omissions would constitute negligence on the part of defendant's engineer, or contributory negligence on the part of plaintiff, are complained of. But these instructions were not of a character that could influence the jury in determining what were the facts to which the law thus declared should be applied, but had reference only to applying the law when the facts should be found. And, as applied to the facts recited in the answers of the jury to interrogatories, the alleged inaccuracies could not have exerted any influence on the return of the verdict. *Mishler* v. *Chicago, etc., R. Co.* (1919), 188 Ind. 189, 122 N. E. 657. A judgment will not be reversed because of instructions given by the court when it is affirmatively shown by the record that they did not prejudice the rights of appellant.

The judgment is affirmed.