**INDIANA STATE HIGHWAY COMMISSION, Defendant-Appellant,**

v.

**Judy VANDERBUR, Administratrix of the Estate of Edward Evans Vanderbur, Deceased, Plaintiff-Appellee,**

**Carolyn J. Redmon, Administratrix of the Estate of James R. Redmon, Deceased, Cross-Plaintiff-Appellee.**

No. 1–280A33.

Court of Appeals of Indiana, First District.

March 16, 1982.

Opinion on Rehearing April 27, 1982. See 434 N.E.2d 575.

Linley E. Pearson, Atty. Gen., Robert F. Hassett, Deputy Atty. Gen., Indianapolis, for defendant-appellant.

Leon D. Cline, Cline, King & Beck, Columbus, Lineback & Lewis, P. C., Greenfield, for Vanderbur.

Vernon J. Petri, Petri & Fuhs, Indianapolis, George B. Davis, Davis & Davis, Greenfield, for Redmon.

NEAL, Judge.

Defendant-appellant Indiana State Highway Commission (State) appeals a judgment in a wrongful death action, arising from a truck wreck, in favor of plaintiff-appellee Judy Vanderbur, Administratrix of the Estate of Edward Evans Vanderbur, Deceased, and cross-plaintiff-appellee Carolyn J. Redmon, Administratrix of the Estate of James R. Redmon, Deceased, from which it appeals.

## ISSUES

The State presents seven issues for review as follows:

I. Did the trial court abuse its discretion in granting appellees' joint motion for severance and realignment of parties?

II. Did the trial court err in excluding from the jury's consideration evidence of Vanderbur's claim against Redmon?

III. Did the trial court err in excluding evidence of Vanderbur's complaint against Redmon?

IV. Did the trial court err in excluding evidence of admissions made by Vanderbur and Redmon in their depositions?

V. Did the trial court err in excluding evidence of Vanderbur's answer to the State's interrogatories?

VI. Did the trial court err in refusing to give the States's tendered Instruction No. 10?

VII. Did the trial court err in overruling the State's motion for mistrial and objections to the supplemental "Allen" charge read about 2:00 a. m.?

## STATEMENT OF THE FACTS REGARDING ISSUES I THROUGH VI

This cause was initiated by the filing of a complaint by Vanderbur against the State

and Redmon for the wrongful death of her husband, Edward. It was alleged as follows: that on November 24, 1975, Edward was a passenger in a semi-tractor trailer rig (semi) driven by James Redmon traveling north on Indiana State Highway 3 in Henry County, Indiana. Upon clearing the crown of the overpass over U.S. Highway 40, which runs from east to west, Redmon was confronted with a line of northbound stopped vehicles. These vehicles were waiting for the lead vehicle to turn left on an unmarked county road which forms a "T" intersection with Highway 3 a short distance north of the apex of the overpass. In attempting to stop, Redmon's semi jackknifed, and collided with a south-bound semi. This collision caused the death of both Edward Vanderbur and James Redmon. The complaint, proceeding upon the theory of concurrent negligence on the part of both James Redmon and the State, alleges that Redmon negligently operated his semi, and that the State negligently constructed and maintained a hazardous, dangerous, and hidden "T" intersection close to the crown of the overpass.

Redmon filed a cross action against the State for the wrongful death of her husband, James, alleging the same negligence as did Vanderbur. Upon joint motion of Vanderbur and Redmon, over objections by the State, the trial court granted a severance of actions and a realignment of parties, wherein Vanderbur and Redmon both became plaintiffs on their suits against the State, and the action of Vanderbur against Redmon was severed for trial at another time. The ground alleged in the motion was conflict of interest between the personal attorney of Redmon pursuing the crossclaim and the attorney for the insurance carrier defending the suit by Vanderbur, the former's interest being to maximize damages, the latter's interest being to minimize damages. No explanation appears to demonstrate the validity of this assertion.

The trial court then granted Vanderbur and Redmon's motions in limine prohibiting the State from placing before the jury the existence of Vanderbur's suit against Redmon. This ruling excluded the complaint

and certain answers in depositions, interrogatories, and cross examination; however, underlying facts were admitted which tended to show that the semi brakes were unsatisfactory, the semi jackknifed, and the semi crossed the center line.

## DISCUSSION AND DECISION

### Issue I. Realignment

Under Ind. Rules of Procedure, Trial Rule 52(B), a trial court has wide discretion to bifurcate trials in furtherance of convenience and to avoid prejudice. We will not disturb its ruling unless a clear abuse of discretion is demonstrated. *Newton v. Yates, et al.*, (1976) 170 Ind.App. 486, 353 N.E.2d 485; *see Dayton Walther Corp. v. Caldwell*, (1979) Ind.App., 389 N.E.2d 723, *rev'd on other grounds*, Ind., 402 N.E.2d 1252.

In this case the State is obligated to try only the case which encompassed the identical claims of plaintiff, Vanderbur, and cross-plaintiff, Redmon. The claim of Vanderbur against Redmon is of no concern to the State, as the negligence of a concurrent tortfeasor is no defense. *Swallow Coach Lines, Inc. v. Cosgrove*, (1938) 214 Ind. 532, 15 N.E.2d 92. Apparently, the State's principal complaint regarding the severance of Vanderbur's claim against Redmon is not that it caused the State prejudice or inconvenience in defending its claim, but that the State was not permitted to demonstrate that another potential concurrent tortfeasor was available to share in culpability on Vanderbur's claim. This matter is discussed in subsequent issues. We find no error in the severance of the claim against Redmon.

### Issues II and III. Exclusion of complaint and other evidence of Vanderbur's claim against Redmon

The trial court excluded the State's offer of the original complaint in which Vanderbur alleged in paragraph 7 that Redmon's attempt to stop jackknifed the semi, causing the collision, and in paragraph 8

that Redmon and the State were guilty of concurrent negligence. The State in its answer admitted that Redmon's semi jack-knifed and caused the collision, but denied paragraph 8 in its entirety. The State argues that Vanderbur is bound by the allegations in the complaint because they are admissions by a party of record which are inconsistent with her position at trial. The only inconsistency we perceive is that in the complaint Vanderbur contends that Redmon and the State were concurrently negligent, and at trial, after the bifurcation, she contended only that the State was negligent. At trial, the State's position apparently was that James Redmon's negligence was the sole proximate cause of the death of the two decedents, and that Vanderbur's assertion of negligence on Redmon's part was admissible as a link in the proof of that position. The State argues that although the concurrent negligence of other wrong-doers is not a defense if the defendant was also negligent, *Swallow Coach Lines, Inc., supra,* the State may still offer the admissions to prove that the negligence of James Redmon was the sole proximate cause of the death of Edward Vanderbur.

■ The State is correct in its assertion that any statement made or attributed to a party which constitutes an admission against his or her interest and tends to establish or disprove a material fact in the case is competent evidence against that party. The admissibility of admissions rests on the fact of inconsistency with the present position of a party who made them. 31A C.J.S. *Evidence* § 272; 12 I.L.E. *Evidence* § 131. Pleadings, even if withdrawn, can form the basis of an admission. *Templer v. Lee,* (1914) 55 Ind.App. 433, 103 N.E. 1090; *The Louisville, New Albany and Chicago Railway Company v. Hubbard,* (1888) 116 Ind. 193, 18 N.E. 611. This rule includes an alternate theory stated in a complaint, *The Baltimore and Ohio and Chicago Railway Company v. Evarts,* (1887) 112 Ind. 533, 14 N.E. 369, even where the two repugnant theories were bifurcated for trial. *Cox v. Ratcliffe,* (1886) 105 Ind. 374, 5 N.E. 5. When the pleadings are not part of the case being tried, they are merely evidential ad-

missions, which are not conclusive and may be open to contradiction or explanation. *Boots et al. v. Canine,* (1884) 94 Ind. 408; *Cleveland, Cincinnati, Chicago and St. Louis Railway v. Gray,* (1897) 148 Ind. 266, 46 N.E. 675. Regarding admissibility, the question is not the weight of the evidence but its relevancy and competency. When evidence is relevant, it should be admitted, however little it seemingly tends to prove. *Boots, supra.*

■ As a general rule admissions by one party to an action are not admissible as evidence against a co-party. 12 I.L.E. *Evidence* § 137; *Buchanan et al. v. Morris,* (1926) 198 Ind. 79, 151 N.E. 385; *Garr, Scott, & Co. v. Shaffer et al.,* (1894) 139 Ind. 191, 38 N.E. 811. Further it is error not to so charge the jury. *Roberts et al. v. Kendall,* (1891) 3 Ind.App. 339, 29 N.E. 487. However, it has been held that it is not reversible error to admit into evidence the admission of a co-party where the trial court admonishes the jury to limit the application of the admission to the party making it, and gives a final instruction to that effect. *Dunbar et al. v. Demaree,* (1936) 102 Ind.App. 585, 2 N.E.2d 1003; *Roberts, supra.*

■ It is further the law in Indiana that where an adverse party denies an allegation in a pleading such allegation cannot thereafter be used as an admission. *Lamb v. Thieme,* (1977) Ind.App., 367 N.E.2d 602; *Brown v. Grzeskowiak,* (1951) 230 Ind. 110, 101 N.E.2d 639.

■ The complaint of Vanderbur was not an admission of Redmon or her decedent, and would have been prejudicial to Redmon's cause. The State did not seek to limit the offer to Vanderbur alone, and the unsupported allegations cannot bind Redmon. Under *Dunbar, supra; Roberts, supra,* their admission into evidence without admonitions and instructions limiting their application would have been reversible error. Further, the State denied rhetorical paragraph number 8, and under *Lamb, supra,* such admissions no longer would have been available as evidence. The admissions

of Vanderbur in her complaint were based upon other evidence, as Vanderbur was not a witness to the accident. The underlying facts regarding the semi's brakes, jackknifing, and being across the center line were admitted into evidence and tended to show that James Redmon's conduct caused the accident. The reception of the evidentiary admissions in the complaint was a matter addressed to the sound discretion of the trial court, and we will only reverse upon a clear showing of abuse of discretion. We are of the opinion that the trial court did not err in refusing to admit Vanderbur's original complaint.

*Issues IV and V. Answers in interrogatories and deposition*

The trial court excluded from evidence certain answers given in pre-trial depositions by Vanderbur and Redmon concerning conversations with their decedents prior to the accident about the unsatisfactory condition of the brakes on the trailer. Also excluded were certain answers to interrogatories propounded by the State to Vanderbur which in effect stated that the evidence of negligence she relied upon in her suit against Redmon was that a portion of the semi was left of center. This conclusion was based upon photographs taken after the accident, State Police Reports, and the statements of officers. Our examination of the record discloses that the substance of the answers in the depositions and the interrogatories was testified to by Vanderbur and Redmon at trial, and their testimony did not differ materially from those answers. This issue does not seem to have been controverted. Any error in the exclusion was harmless. *See Arnold v. Dirrim,* (1979) Ind.App., 398 N.E.2d 442.

*Issue VI. Instruction No. 10*

The trial court refused the State's tendered Instruction No. 10, which reads as follows:

"You are instructed that Judy Vanderbur in her complaint against the Indiana State Highway Commission alleges in part—Redmon jackknifed his tractor causing a collision with the oncoming truck. This in turn caused the cab of the Redmon trailer to erupt into flames that claimed the lives of both Vanderbur and Redmon. The Indiana State Highway Commission has admitted these facts. As to the claim of Judy Vanderbur, no evidence is necessary to establish that Redmon jackknifed or that the flames that resulted from the collision claimed the lives of James Redmon or Edward Vanderbur."

The State contends such refusal was error.

Our examination of the instruction and the record discloses that the instruction merely tells the jury that they may accept as true that the Redmon semi jackknifed and that the decedents burned to death as a result of the collision, facts that are amply supportd by the record, and are not controverted. The State has not attempted to demonstrate in its brief how it was prejudiced. Under Ind. Rules of Procedure, Appellate Rule 15(E), we may not reverse for harmless error. *Schwartzkopf et al. v. State ex rel. Fettig et al.,* (1965) 246 Ind. 201, 204 N.E.2d 342. An appellant must affirmatively show harmful error. *Lake Shore Civic League Inc. v. Vilm-Waltermire Corp. et al.,* (1968) 143 Ind.App. 314, 240 N.E.2d 499. Judgments will not be reversed for errors in instructions when it appears that the appellant has not been prejudiced thereby. *Engle v. Cleveland, Cincinnati, Chicago and St. Louis Railway Company,* (1925) 197 Ind. 263, 149 N.E. 643; see *Reely v. Applegate Elevator Company, Inc. et al.,* (1972) 154 Ind.App. 136, 289 N.E.2d 301.

We are unpersuaded that the State was in any way prejudiced by the exclusion of Instruction No. 10.

## STATEMENT OF THE FACTS REGARDING ISSUE VII

On July 27, 1979, the final instructions were read, and the jury retired to deliberate at 12:15 p.m. At 8:15 p.m. upon the jury's request, the trial court reread the final instructions. At that time the jury foreman was questioned by the court. He

informed the court that the jury had not arrived at a verdict on each claim and could not agree on whether the State was at fault. At 8:39 p.m. the jury again retired and resumed deliberation. After midnight on July 28, the jury was returned into open court. The foreman announced that the jury was deadlocked, but the court sent it back to deliberate further. At 1:00 a.m. on July 28, the jury sent an unsigned note to the court which read:

"Judge, we cannot find for the plaintiff or the defense because of a deadlock vote of nine to two in favor of Redmon and Vanderbur and [sic] we take a majority vote, the two voting against are holding out because of personal feelings and not evidence presented. Mr. Hayes and Mr. Hyatt are the dissenters."

Discussion was had between court and counsel relative to any response to the note, the State objecting to any communication. Thereafter, at 2:00 a.m. over the State's specific objections, the jury was returned into open court and the trial judge gave the following instruction:

"Please be seated. Ladies and Gentlemen, the court has received a note which was sent out through the Bailiff and in response to the note instructs you as follows:

You may not return a verdict based upon a majority vote. Each verdict must be the result of a unanimous vote of the jury.

Your verdicts in this case must be based solely upon the evidence presented in the trial and the law given you by the Court.

During your deliberations you should not yield your individual judgment to your fellow jurors just so you can return a verdict. However, it is your duty to impartially consider the evidence with your fellow jurors, to examine your own views in light of the discussions, and to consult and reason with your fellow jurors in a good faith effort to reach a just verdict."

The jury again retired and resumed deliberation. It returned the verdicts in favor of Vanderbur and Redmon at 3:22 a.m.

## DISCUSSION AND DECISION

Since its appearance in Indiana jurisprudence in *Guffey v. State*, (1979) Ind.App., 386 N.E.2d 692, decided by this District on March 6, 1979, the so-called "Allen charge," never popular elsewhere among courts and writers, and only tolerated here, has been controversial. Named after a case bearing that name, *Allen v. United States*, (1896) 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, the Allen charge, variously written, generally purports to exhort a deadlocked jury to reach an unanimous decision. It is a single instruction, not previously given with final instructions, given only after the jury has reported a deadlock. It consists of three main elements: (1) jurors should candidly deliberate, giving deference to the view of other jurors with a disposition toward being convinced; (2) minority jurors should reconsider the reasonableness of their convictions; and (3) no juror should abandon a conviction scrupulously held. *Guffey, supra*. Though *Guffey* was a criminal case, the Allen charge was likewise approved for use in a civil case in *Thompson v. Lee*, (1980) Ind.App., 402 N.E.2d 1309, 1315–16, for the reason that,

"[T]he principles or considerations governing the propriety of verdict-urging instructions in civil cases appear to be essentially the same as they are with respect to criminal trials, the courts having rarely, if ever, suggested any considerations as clearly differentiating the two kinds of trials in this respect."

Annot., 19 A.L.R.2d 1257, 1258 (1951). *See also*, Annot., 38 A.L.R.3d 1281 (1971); Annot., 41 A.L.R.3d 845 (1972); Annot. 41 A.L.R.3d 1154 (1972). This District's position on the Allen charge was reaffirmed in *Burnett v. State*, (1981) Ind.App., 419 N.E.2d 172, *transfer granted and opinion vacated*, Ind., 426 N.E.2d 1314.

However, the Fourth District of this court had taken a contrary view in *Lewis v. State*, (1980) Ind.App., 409 N.E.2d 1276, *transfer granted and opinion vacated*, Ind., 424 N.E.2d 107, and held that any verdict-

urging instruction submitted to a deadlocked jury was reversible error. The Fourth District gave the following reasons for its decision:

"The criticism of this type of instruction is that by its use the judge compels the jury to reach a verdict when it might otherwise not do so and thus denies the parties a fair trial. We agree with this additional criticism and hold that the continued use of this type of instruction is improper and should be discontinued."

409 N.E.2d at 1277. Although it had denied transfer in *Guffey*, the Supreme Court, because of the conflict between Districts, granted transfer of *Lewis v. State*, (1981) Ind., 424 N.E.2d 107. Later, the Court granted transfer of *Burnett v. State*, (1981) Ind., 426 N.E.2d 1314, which had been decided by this court while transfer of *Lewis* was pending.

The Supreme Court, in *Lewis*, reviewed the history of the Allen charge and commented upon the unsuccessful attempts by other courts to write an instruction which would avoid the criticism leveled against the Allen charge. The court posed the problem as follows:

"The question involved was whether the trial judge abused his discretion by unduly commenting on, or giving emphasis to, certain matters of evidence by mandating a jury to act and deliberate in a certain manner or by intimidating the minority jurors into voting with the majority in order to reach a conclusion of the case, even though they might feel inclined to decide the case otherwise."

424 N.E.2d at 109.

The attention of the *Lewis* court was directed to *American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Trial By Jury*, § 5.4, at 145–146 (1969 Edition), (Standard 15–4.4 at 133, 1980 Edition), which provided a pattern instruction to be given jurors along with the final instructions before they retired to deliberate. The instruction would inform the jury of its duties and the manner in which it was to deliberate and arrive at a verdict. Section

(b) of the standard provided that if the jury was unable to agree, the court could give or repeat the instruction alone. Such a procedure was followed in *United States v. Silvern*, (7 Cir. 1973) 484 F.2d 879, and was recommended as a possible approach by the Fourth Division of the Court of Appeals in its decision in *Lewis*.

The Supreme Court, however, rejected the approach and stated:

"The American Bar Association Standards further suggest Instruction 8.11 of Jury Instructions and Forms for Federal Criminal Cases, 27 F.R.D. 39, 97–98 (1961) as a charge that is consistent with these standards. That instruction reads as follows:

'The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.'

We recognize that the above language is an instruction on jury deliberations commonly used in Indiana courts as a final instruction. It is a sound instruction informing the jury of their duties and the manner in which they are to deliberate and arrive at a verdict. We recommend that this instruction be given to the jury in all trials.

It appears to us, however, that the procedure of paragraph (b) of the above Standard in allowing the court to separate this instruction or parts of it from the other instructions and to re-give it to the jury after deliberations recreates the problem of the 'Allen' charge situation all over again in a different form. A better solution is the employment of the accepted procedure which has been used effectively to respond to any type of problem occasioned by a jury during its deliberations. The proper procedure is for the court to call the jury back into open court in the presence of all of the parties and their counsel, if they desire to be there, and to reread all instructions given to them prior to their deliberations, without emphasis on any of them and without further comment. This procedure will give the jury the aid necessary for them to continue their deliberations without compounding potential problems as the giving of an Allen-type instruction has done."

424 N.E.2d 111. *Lewis* was followed by *Burnett*, wherein the Supreme Court stated:

"The 'Allen' type instruction is apt to seriously impinge upon the fact finding process by improperly influencing the ultimate vote of one or more of the jurors."

426 N.E.2d 1315–16.

Attorneys for Redmon and Vanderbur have devoted considerable space in their briefs, written before the Supreme Court decision in *Lewis*, to discussing the merits and text of the supplemental instruction, or arguing that it was not an Allen charge at all. Nevertheless, *Lewis* and *Burnett* proscribed the giving of any such instruction at all when it is given for the first time alone after deliberation has commenced. We read *Lewis* and *Burnett* to say that one of the principal evils to be avoided is pressuring minority jurors to change their vote and thereby impinging upon the fact finding process. The *Lewis* court returned to the time-honored procedure of reading all the instructions or none, and we believe the procedure set forth in *Lewis* is exclusive.

In that regard we see little difference between the instruction given her and the one in *Lewis, Burnett,* or *Guffey*. In each case the jurors were instructed that it was their duty to consider the evidence impartially with their fellow jurors, to examine their own views in light of the discussions, and to consult and reason with other jurors in a good faith attempt to reach a verdict. Of course similar language was used in the American Bar Association Standard instruction approved by the Supreme Court in *Lewis*. However, in this case the instruction was given for the first time after the jury was deadlocked and the identity of the recalcitrant jurors and their reasons for holding out were disclosed. Such a procedure would tend to call attention to those jurors and pressure them to change their votes. This is the prohibited act, and the reversible error.

For the above reasons this cause is reversed, and the trial court is ordered to grant a new trial.

Reversed.

RATLIFF, P. J., and ROBERTSON, J., concur.