BEAMAN *v.* CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

[No. 11,013.   Filed February 24, 1922.]

1. EVIDENCE.—*Direct Evidence.—Inferences.*—A fact need not be proven by direct evidence, it being sufficient if the evidence supplies reasonable grounds for inferring the facts essential to a recovery. p. 638.

2. NEGLIGENCE.—*Contributory Negligence.—Last Clear Chance. —Proximate Cause.*—The last clear chance doctrine does not permit an injured person to recover in spite of negligence on his part contributing to the injury, but does permit a recovery notwithstanding the want of due care on the part of the injured person where such want of due care was not the direct and proximate cause of the injury, and the failure of defendant to take advantage of the last clear chance of avoiding the injury was the sole cause thereof. p. 640.

3. NEGLIGENCE.—*"Last Clear Chance" Doctrine.—Scope and Applicability.*—In order that a recovery for personal injuries may be had under the last clear chance doctrine, it must appear that some appreciable time before the injury the defendant owed the injured person a special and particular duty, failure of which could be treated as the sole proximate cause of the injury, the special duty of exercising particular precautions arising when the occasion presents it and continuing until the time of the injury, and the doctrine applies when the situation of the parties just prior to the injury was such that the defendant, by the exercise of due care, could have prevented it

and plaintiff could not, but if the opportunity of the injured person to avoid the injury was as late or later than that of defendant, the rule is inapplicable. p. 641.

4. NEGLIGENCE.—*Contributory Negligence.*—*Last Clear Chance.* —*Jury Questions.*—Whether the situation of the parties just prior to an injury was such that defendant, by the exercise of reasonable care, could have prevented it and plaintiff could not, and whether the opportunity of the injured person to avoid injury was as late or later than that of defendant, are questions for the jury, where the evidence relating thereto is conflicting or the undisputed evidence is such that reasonable minds might draw opposite inferences. p. 641.

5. NEGLIGENCE.—*Contributory Negligence.*—*Last Clear Chance.* —*Proximate Cause.*—Where a party by his own negligence places himself in a position of threatened danger from some agency under the control of another, and the situation is such that by the exercise of reasonable care he cannot extricate himself from the danger in time to avoid injury, but the defendant by the exercise of reasonable care can prevent such injury and fails to do so, the last clear chance doctrine applies; and after the time the person in peril reaches the position where due care on his part would be unavailing, the duty of the defendant to such person immediately arises, and if the subsequent negligence of the defendant then intervenes, or, if after that time, the defendant by the exercise of ordinary care could prevent the injury but fails to do so, such subsequent negligence is treated as the sole proximate cause of the injury. p. 642.

6. RAILROADS.—*Injuries to Persons on Tracks.*—*Liability.*—*Last Clear Chance.*—In an action for the death of a railroad employe run down by a train while walking on the tracks of another company, *held* that there could be no recovery under the last clear chance doctrine, where the complaint predicated liability upon the negligent failure of defendant's engineer to discover decedent's presence upon the tracks, in the absence of evidence to show an allged general custom of railroad employes to use the tracks at the place where the accident occurred, since in such case there was no duty resting upon the engineer to maintain a lookout for those whom he ought not reasonably to expect to be upon the tracks, so that he could not be deemed guilty of negligence in failing to discover the presence of decedent. p. 643.

7. RAILROADS.—*Injuries to Persons on Tracks.*—*Duty Toward Trespassers.*—The only duty which a locomotive engineer owes to one trespassing upon the railroad tracks is to refrain from wilfully or intentionally injuring him after discovering his presence. p. 643.

From the Marion Superior Court (A713) ; *Theophilus J. Moll,* Judge.

Action by Sarah E. Beaman against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Joseph W. Hutchinson* and *Emsley W. Johnson,* for appellant.

*Forrest Chenoweth* and *Frank L. Littleton,* for appellee.

McMahan, J.—Complaint by appellant against appellee for damages on account of the death of her son, which it is alleged was caused by the negligence of appellee. The court at the conclusion of appellant's evidence in chief instructed the jury to return a verdict in favor of appellee. A verdict and judgment having been rendered against appellant, she appeals and assigns as error the action of the court in overruling her motion for a new trial, the specifications of which are: (1) that the verdict is not sustained by sufficient evidence; (2) that it is contrary to law; (3) that the court erred in instructing the jury to return a verdict for appellee.

The facts as disclosed by the evidence are in substance as follows: Appellant's son, aged seventeen, was killed by being struck and run over by a locomotive engine owned and operated by appellee. The boy, whose father was dead, had been working for the Pennsylvania Railroad for about a year prior to his death. At the time of his death he was working in the freight office in Indianapolis as a clerk. He also performed messenger service and was supposed when working at night to make one or two trips each night from the freight office, which was about one block east and a short distance north of

the place where he was killed, to the Union Station, which was about a block west of the place where he was killed.   In order to reach the station from said freight office one could go about a block south on Delaware street and then walk west on or between the railroad tracks, or one could go west from the office on Georgia street and then south on another street to the station without going on or along the railroad tracks.   It was a half or three-quarters of a block shorter along the tracks.   Appellant's son was killed about two o'clock in the morning at the point where the railroad tracks crossed Pennsylvania street.   There were three railroad tracks crossing Pennsylvania street at this point.   The most northerly one was the Panhandle switch and ran east from Pennsylvania street about two blocks and then to the north.   The next track south was the west-bound main.   South of this was the east-bound main track. These main tracks also ran east about the same as the Panhandle switch.   There was another track crossing Pennsylvania street at this point, leading into the Refrigerator Plant and called a cross-over track, extending the full width of Pennsylvania street, which was fifty or sixty feet wide, and at the place where these tracks crossed it was planked from the property line on one side to the property line on the other side.   This crossover track led from the Panhandle switch over to the west-bound main.   At the time of the accident Omer L. Fisher was working as a switchman and was located about twenty-five feet west of Pennsylvania street and from sixty to seventy-five feet from the place where the boy was struck.   There was a yard engine on the north track backing freight cars in the Panhandle freight house.   This engine was headed west and obstructed about half of the street.   There were several cars attached to this engine and they extended about a half block to the east.   There was a passenger train on

the south track consisting of an engine and seven coaches, the engine being headed east and backing the train into the depot. Appellant's son was struck and killed by a passenger train approaching from the east on the west-bound main.

Mr. Fisher was the only witness who saw the accident. Without setting out his testimony in detail, it is sufficient to say that he testified that he was standing between the north and the middle track, about twenty-five feet west of Pennsylvania street. As the passenger train got to the east side of Pennsylvania street, he saw the boy about the time the train entered the sidewalk; it looked to him as though the boy was right on the end of the plank when he was hit. The boy stepped from the north side of the west main track on to the track on which the train was coming. Mr. Fisher saw him step on the track and saw the train strike him at the same time. "He appeared all of a sudden; did not see him coming down the tracks before he was struck; was looking in that direction."

There was no direct evidence that the decedent was on his way from the freight office to the station when killed. But there is evidence that after the accident papers were found at that point which indicated that they came from the freight office and were intended to be delivered at the station. This was sufficient to justify an inference that the decedent was on his way from the office to the depot at the time of his death. Mr. Fisher also testified that he had seen the decedent before, but had not seen him use the route on the north side before. He had used the one on the south side, but not very often. The only other testimony of the use of these tracks by the decedent or by other persons was given by Mr. Craig, chief clerk at the Pennsylvania freight office, who testified that he did not know whether the decedent had used the route along the tracks or

had been accustomed to use this route in going from the office to the depot. He had seen some boys going that way. The witness had occasionally used this route in July, 1916, and prior thereto in going to the station.

Appellant insists that the court invaded the province of the jury and erred in directing a verdict for the defendant and cites *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, 73 N. E. 99, where the court said: "It is a settled rule in this State that the right of the court to direct a verdict, as it did in this case, can only be upheld where, after a consideration of all of the evidence most favorable to the plaintiff, together with all the reasonable and legitimate inferences which a jury might have drawn therefrom, it can be said that the evidence is clearly insufficient to establish one or more facts essential to plaintiff's right of action." Juries and courts have the right to draw reasonable inferences from the facts found. It is not necessary that a fact shall be proven by direct evidence. It is sufficient if the evidence supplies reasonable grounds for inferring the facts essential to a recovery. *Riehl* v. *Evansville Foundry Association* (1885), 104 Ind. 70, 3 N. E. 633; *Indianapolis, etc., R. Co.* v. *Hubbard* (1905), 36 Ind. App. 160, 74 N. E. 535.

It is insisted that the circumstances in this case, as disclosed by the evidence, are such that a jury might legitimately infer that the engineer in charge of appellee's train actually saw decedent in time to have prevented the injury by the exercise of ordinary care. In support of this contention it is argued that the evidence shows there were two routes from the freight house where decedent was working to the Union Station, which routes employes of the Pennsylvania Company of which decedent was one, used in going to the station. One of these routes was down the tracks from Delaware

street west to the station.    The other route was west on Georgia street and a half to three-quarters of a block farther.

As heretofore stated there is no direct evidence that decedent was on the way from the freight office to the station or that if he was on his way to the depot, that he was walking along or on the railroad tracks.    At the time of the accident there was a switch engine backing some cars (the number is not disclosed) east on the north track at Pennsylvania street.    When the boy was first seen, the front of the switch engine was about the middle of Pennsylvania street and moving east.    There was a passenger train on the south track being backed westwardly into the depot, several cars being west of Pennsylvania street and several including the engine being east thereof.    The train that struck decedent was approaching from the east on the middle track.    The accident happened about two o'clock in the morning on a moonlight night.    There was no evidence of any light in that vicinity other than the lantern which the switchman had and the headlight on the engine that struck decedent.    There were papers found immediately after the accident indicating that they were being taken from the Pennsylvania freight office to the depot.    It was the duty of decedent to make one or two trips at night from the freight office to the station for the purpose of carrying railroad papers.    The exact distance between the Panhandle switch and the west-bound main is not disclosed, although the evidence is that they were more than four feet eight and a half inches, and less than six feet apart; and when trains were passing on the two tracks, there was a clearance space of one foot between them.    There would therefore be a space of ten or twelve feet between the cars on the Panhandle switch and the passenger train on the east-bound main, and it was in this space that the passenger train which struck

decedent was running at the time of the accident. After this train had crossed Delaware street, the switchman threw the switch and with his lantern signaled it to proceed. His signal was answered by two blasts of the whistle. This took place about a half minute before decedent was seen.

Appellant argues that the engineer saw the switchman, and that he was therefore in a position to have seen the decedent as well. But there is no evidence that the engineer saw the switchman. He did see the signal given by the switchman with his lantern. That much we know, because he answered it with two blasts of the whistle, but we cannot infer from that fact that he saw either the switchman or that the decedent was in such a position that he could have been seen by the engineer. The accident took place at night and we know that notwithstanding it was a moonlight night objects are not as clearly seen as in the daytime and that shadows are more frequent.

Appellant seeks to bring her case within the doctrine of the last clear chance. The circumstances under which a recovery can be had under this doctrine 2. are clearly set out and discussed in *Indianapolis Traction, etc., Co.* v. *Croly* (1911), 54 Ind. App. 566, 96 N. E. 973, 98 N. E. 1091, where it was in substance held that the proper application of this doctrine did not permit an injured person to recover in spite of negligence on his part contributing to the injury, but that it did permit a recovery notwithstanding the want of due care on the part of the injured person in cases where the facts were such that it could be said that such want of due care was not the direct and proximate cause of the injury. Not that the injured party had used due care, but that want of such care was not the proximate cause of the injury, and that the failure of a defendant to take advantage of the last clear chance of

avoiding the injury was the sole cause of the injury. In order that recovery may be had under this doc-

3. trine, it must appear that prior to the injury the defendant owed the injured person a special and particular duty, failure of which could be treated as the sole proximate cause of the injury. The situation of the parties prior to the injury must be such as gives rise to a special duty to the person injured some appreciable time before the injury occurs. The duty of exercising particular precautions does not arise until the occasion which gives rise to such duty exists. But when the occasion presents it, the special duty at once arises and continues until the time of the injury. If the facts in this case are such that the rule is applicable, then from the time the emergency arose until the time of the accident the engineer was required to use every reasonable means to prevent the threatened injury. If, during that time, he failed to use proper means to avoid injury, appellee would be held liable. The doctrine of the last clear chance cannot be applied to every case when it appears that the injury has been inflicted by a collision with an agency under the control of another. The rule applies only in such cases as are brought within its operation by the facts proven in each particular case. When the evidence shows that the injured party was in a position of peril, that the defendant saw him in the perilous position and by the exercise of due care, could have prevented it and that the plaintiff could not, the rule becomes applicable. If, however, the undisputed evidence shows that the opportunity of the injured person to avoid injury was as late or later than that of the defendant, the rule has no application. If the

4. evidence is in conflict upon this point or if the undisputed evidence upon this question is such that reasonable minds might draw opposite inferences,

it becomes a question for the jury under proper instructions from the court. As was held in the Croly case, the doctrine of last clear chance applies only to cases where the defendant's opportunity of preventing the injury by the exercise of due care was later in point of time than that of the injured person. This is the yardstick by which the application of the rule must be determined in each particular case. If a plaintiff's negligence concurs with that of the defendant up to the very instant of the accident or if it continues as long as the negligence of the defendant, the doctrine cannot be properly applied, although, as was said in the Croly case, there is at least one class of cases in which it has been held that the injured person may recover under the rule notwithstanding his negligence continues up to the very time of his injury.

When a party by his own negligence places himself in a position of threatened danger from some agency under the control of another, and where his situation is such that by the exercise of reasonable care he cannot extricate himself from the threatened danger in time to avoid injury, but the defendant by the exercise of reasonable care can prevent such injury and fails to do so, the general rule applies. In such cases the negligence of the injured party is said to cease, and after the time he reaches the position where due care on his part would be unavailing, the duty of the defendant to such person immediately arises, and if the subsequent negligence of the defendant then intervenes, or, if after such time, the defendant by the exercise of ordinary care could prevent the injury but fails to do so, such subsequent negligence on the part of the defendant is treated as the sole proximate cause. In such cases the defendant has power to avoid the injury after the conditions arise which require the use of special care toward the party injured.

If the decedent was a trespasser, the only duty which the engineer owed him was to refrain from wilfully or intentionally injuring him after discovery of his presence. *Cleveland, etc., R. Co.* v. *Means* (1914), 59 Ind. App. 383, 104 N. E. 785, 108 N. E. 375, and authorities there cited. This is not a case of an engineer actually seeing a person on or approaching the track, where the conduct and appearance of such person were such as to indicate that he was oblivious of his danger and where the engineer after having knowledge of such perilous situation, had time to prevent the injury by the exercise of due care. It is a case where liability must depend upon the negligent failure of the engineer to keep a lookout for those whom he ought reasonably expect to be upon the track. The complaint in the instant case is grounded upon an alleged general custom and practice of the messengers of the Pennsylvania and of others to use the railroad tracks at the place where the decedent met his death.

The only evidence tending in the least to support this theory of the complaint, is the testimony of Mr. Craig, who was the chief clerk at the freight office, and of the switchman, Mr. Fisher. The former testified that he had seen some boys go down through the freight house and to the station that way; that he had seen them return that way, and that he had occasionally used this route in July, 1916, and prior thereto. The switchman testified that he had seen the decedent before, had not seen him use the route on the north side, but had seen him use the one on the south side, though not very often. This evidence, in our judgment, is not sufficient to show a general custom, as alleged in the complaint, or to show that the engineer on the train that struck the decedent was under any special duty to be on the lookout for him or others who possibly might be on the track at that time and place.

The court committed no error in instructing the jury to return a verdict for appellee.

Judgment affirmed.