UNION TRACTION COMPANY OF INDIANA *v.* RINGER, ADMINISTRATOR, ETC.

[No. 25,169. Filed April 6, 1927. Rehearing denied July 1, 1927.]

1. NEGLIGENCE.—*Answer of general denial raises issue of contributory negligence as well as defendant's negligence.*—In an action by an administrator for damages for the death of his decedent resulting from the alleged negligence of the defendant, an answer of general denial not only puts in issue the negligence of the defendant, but also whether any negligence of the decedent proximately contributed to cause his injury and death (§380 Burns 1926). p. 410.

2. RAILROADS.—*Instruction authorizing recovery for death of driver of truck in collision with interurban train at street crossing, notwithstanding contributory negligence, was error.*—In an action against a railroad company for the death of the driver of an automobile truck in

collision with an interurban train at a street crossing, an instruction withdrawing from the consideration of the jury all evidence as to the driver's contributory negligence in driving on the track in front of an interurban train and authorizing plaintiff's recovery notwithstanding the contributory negligence of the decedent, even though the defendant could not have prevented the death by the exercise on its part of any care that was possible after decedent's contributory negligence had ceased to operate as a proximate cause, should not have been given. p. 413.

3. NEGLIGENCE.—*Negligent person can only recover for injuries by another when latter's negligence was sole proximate cause of injury.*— A person who was himself negligent can only recover for the negligence of another when the proximate cause of the former's injury was the other's negligence, and his own negligence, even though it contributed thereto in some degree, was not really a proximate cause thereof because it had ceased to operate before the injury was inflicted. p. 415.

4. RAILROADS.—*Instruction authorizing recovery for death in collision with interurban while driving across track if deceased was not negligent after collision, held error.*—In an action against a railroad company for the death of a person struck by an interurban while driving across the track at a street crossing, an instruction that even though the negligence of the decedent and of the defendant before the collision had operated to cause it, yet, if neither the deceased nor the defendant had been guilty of further negligence after the collision which contributed to cause the injury, the plaintiff was entitled to recover, was error, such condition not being within the doctrine of antecedent and subsequent negligence. p. 415.

5. TRIAL.—*Instruction directing jury not to consider negligence of person killed in crossing accident under complaint based on doctrine of "last clear chance," held error.*—In an action for the death of a party who drove a motor truck on an interurban track in front of a rapidly moving train, an instruction directing the jury not to consider decedent's negligence before or after the collision in determining the liability of the defendant under a paragraph of the complaint seeking a recovery under the doctrine of "last clear chance," was error, where there was evidence that deceased was not injured by the collision but that his death was caused by defendant's inability to stop the train because of defective brakes which were rendered ineffective by decedent's contributory negligence. p. 416.

6. RAILROADS.—*Contributory negligence will not bar recovery where railroad failed to use reasonable care to avoid injury after discovering injured person's peril.*—Contributory negligence in driving in front of a rapidly-moving train will not preclude recovery where defendant's employee's operating the train actually knew, in time to have avoided the injury, that the driver was unconscious of his danger and they

failed to use the means at hand, by the exercise of reasonable care, to stop the train and thus avoid the injury; such negligence being regarded as a failure to take advantage of the "last clear chance." p. 417.

7. RAILROADS.—*Issue of contributory negligence held for the jury where plaintiff's decedent drove truck in front of rapidly-moving train and collision disabled train's brakes.*—Where there was evidence that the negligence of plaintiff's decedent in driving a truck on the track in front of a rapidly-moving train contributed to his death, the collision disabling the brakes on such train so that it could not be stopped or controlled until it had pushed the truck 100 feet or more and turned it over, an instruction withdrawing the issue of his contributory negligence from the consideration of the jury, was error, as the defendant had the right to go to the jury on the issue joined by its answer of general denial whether the decedent's negligence had proximately contributed to cause his injury. p. 417.

From Hendricks Circuit Court; *Zimri E. Dougan,* Judge.

Action by Charles A. Ringer as administrator against the Union Traction Company of Indiana. From a judgment for plaintiff, the defendant appealed to the Appellate Court. (Transferred to the Supreme Court under §1351 Burns 1926). *Reversed.*

*J. A. Van Osdal, Ralph K. Kane, Gideon W. Blain* and *Robert Hollowell, Jr.,* for appellant.

*Frank B. Ross, Edward H. Knight, Beckett & Beckett* and *Shirley, Whitcomb & Dowden,* for appellee.

MYERS, J.—Appellee recovered a judgment of $4,000 damages for the death of his decedent, who was killed when an automobile truck that he was driving overturned upon him, after having collided with a train of electric interurban cars at a highway crossing.

The only error assigned and not waived is the overruling of appellant's motion for a new trial, wherein it specified as errors the giving of certain instructions, the refusal to give certain others, and that the verdict is not sustained by sufficient evidence.

The first paragraph of complaint was dismissed, and the case was submitted to the jury upon the issues formed on the second and third paragraphs. In addition to the formal allegations, the second paragraph of the complaint alleged, in substance, that defendant operated northward from the city of Indianapolis, to and over tracks laid in Ninth street across Christian Avenue in the city of Noblesville, an electric train of cars equipped with air brakes and devices for stopping, and with whistles and devices for giving signals; that, before reaching the street crossing, the train passed through a closely built up five-block section of the city, with public school grounds at the northeast corner of the before-mentioned intersecting streets. A person driving west on Christian avenue east of Ninth street could not see south along defendant's tracks, because of the buildings, trees, vines and shrubbery at the southeast corner of these streets, and could not see cars approaching from the south until "practically on or very close to" defendant's tracks; that the crossing was much used and 150 feet south of it was a sign directing all motormen to "run slowly" to and past the public school; but that defendant negligently ran the train toward and upon the crossing at the high and dangerous rate of speed of forty to fifty miles an hour, without having it under control and without giving any warning of its approach; that plaintiff's decedent was driving an automobile truck west on Christian avenue and across said track as defendant's train approached, and, when defendant's motorman saw said truck on the crossing, he immediately applied "the air brakes in emergency" and attempted thereby to stop the train, but, by reason of said high and dangerous rate of speed, he was unable so to do, until the train had struck decedent's truck on the crossing and had shoved it 240 feet ahead of the train; that decedent was not injured by the collision, nor until the truck had been so shoved about

100 to 150 feet, when it was overturned by the train and he was thereby killed. That if the train had been operated at a reasonable rate of speed up to the time the brakes were applied, it could and would thereby have been stopped before the truck was overturned and before the decedent was injured, and that the high and dangerous rate of speed was the proximate cause of decedent's death.

Counsel for appellee, in giving their interpretation of the second paragraph, say that "the high rate of speed at which this train of cars approached and ran on to the crossing was the sole proximate cause of decedent's death"; that under the state of facts alleged, a speed of ten or fifteen miles an hour would have constituted due care, and at that speed the brakes would have stopped the train before the truck was upset, and decedent would not have been injured; that "it was negligence to approach this crossing at from forty to fifty miles an hour."

The third paragraph of complaint, in describing the manner in which the injury was caused, alleged that plaintiff's decedent drove a truck loaded with bailed straw along Christian avenue from the east and upon the crossing in Ninth street, "and that while said truck was on and passing over defendant's said track at said point defendant ran one of its interurban cars . . . against said truck and negligently pushed or shoved said truck ahead of said car a distance of about 240 feet; that defendant's motorman saw the decedent in said truck . . . and saw and realized the decedent's peril . . . from the time he so struck said truck with said interurban car and at all times thereafter, but . . . negligently failed to use the brakes and appliances on said interurban car to stop said car and avoid injuring and killing decedent, but that said motorman negligently ran said car and shoved said truck ahead of said car until said truck turned over and thereby . . .

killed plaintiff's decedent . . . that decedent was not injured by the direct impact of said collision and was wholly uninjured until . . . said truck turned over . . ."; that the motorman, by the exercise of due care, could have stopped the car before the truck turned over; "that the negligence of said motorman in failing to stop said car after said collision and before said car turned over as aforesaid was the proximate cause of decedent's injury and death."

Counsel for appellee say of this paragraph that it "is based upon the grounds of liability known strictly as the 'last clear chance' " and that "this paragraph predicates negligence on the failure of the motorman to use due care only after the collision and after he had discovered decedent's peril." The record makes it clearly apparent that the trial court adopted appellee's interpretation of each paragraph, and that the case was tried on the theories thus outlined.

The answer to each paragraph of the complaint was a general denial, which not only put in issue the question whether or not defendant did the alleged negligent acts, as charged in either paragraph, but also whether or not any negligence of plaintiff's decedent proximately contributed to cause his injury and death, which contributory negligence, if established, would be a defense to the cause of action alleged in each paragraph. §380 Burns 1926, ch. 41, Acts 1899 p. 58; *Indianapolis St. R. Co.* v. *Taylor* (1902), 158 Ind. 274, 63 N. E. 456; *Beaman* v. *Cleveland, etc., R. Co.* (1922), 77 Ind. App. 633, 134 N. E. 510.

Plaintiff introduced evidence strongly tending to prove that defendant did operate its train at a high and dangerous rate of speed under the circumstances alleged in the second paragraph of complaint, and that decedent's truck was shoved many feet after the collision before it upset and killed him, together with evidence that even

at the rate of speed at which the train was being operated, it ought to have been stopped before reaching the point where it overturned the truck. But there was other evidence tending to prove that decedent's own negligence directly contributed to cause his injury and death, and that defendant was powerless to have prevented the injury after such contributory negligence had ceased to operate in producing the conditions by which the injury was brought about, that is to say: Ninth street was sixty-six feet wide, and the east rail of the track on which defendant's train was operated was seventeen feet eleven inches from the east curb, and about thirty feet west of the east property line. Christian avenue was forty feet wide, of which approximately twenty feet was in the roadway, between curbs, and eight feet on each side next to the property line was used as a sidewalk. The dwelling house on the lot at the southeast corner was thirty-two feet nine inches back from the south line of Christian avenue, and twenty-eight feet ten inches back from the east side of Ninth street, with a smoke house and grape arbor east of it, and of the two trees between the house and these streets, one stood twenty-four feet nine inches east and the other forty-seven feet east of Ninth street, besides three trees in Ninth street standing in a row about six feet east of the east curb, which were, respectively, seventeen feet, forty-six feet and sixty-eight feet south of the curb along the south side of Christian avenue. The branches of the tree nearest to Christian avenue were seven or eight feet from the ground, and the branches of the other trees were higher, so that after reaching the front of the corner house a person driving west on Christian avenue toward Ninth would have twenty-three feet of unobstructed space between the house and the trees, and could "look clear down the entire length of the street," and "see a distance south along Ninth street as far as South street," nearly 300 feet.

The decedent, as he drove toward the crossing, when less than three squares from it, saw the car coming north, two or three minutes before the collision, and that as he came near Ninth street, he knew he was approaching the railroad track and slowed down to three or four miles an hour. When he was even with the house, he was in plain sight of the train and the motorman saw him and commenced blowing the whistle, but he drove ahead, and as he came onto Ninth street, he again saw the car approaching from the south, but did not try to stop the truck. When the car was only forty or fifty feet away, he attempted to turn north upon Ninth street in the direction the car was going, but, while making the turn, the car struck the left rear corner of the truck. Defendant's train consisted of a motor car that weighed forty-seven tons and a trailer that weighed seventeen tons, and was equipped with air brakes that were operated by a hand controller used by the motorman. There was evidence that the station whistle was blown and the crossing signal sounded, and as the train came near the crossing at Christian avenue, it was running, variously estimated, at from thirteen to thirty-five miles an hour, "drifting" without power and gradually slowing down. Also that, when the motorman first saw that the truck was about to drive upon the crossing, he "threw the brakes into emergency and grabbed the whistle cord and held it down," and the whistle was blown sharply and the gong rung. The train was then about seventy-five or eighty feet south of the crossing. The collision happened twenty or twenty-five feet north of the crossing, and from the center of the intersection of Christian avenue and Ninth street to the front end of the car when stopped on Ninth street was 240 feet. The motorman remained in the front vestibule until the car stopped, and "did everything that could possibly have been done to stop the car," but the collision with the truck broke the air pipe

that led from the hand lever to the brakes, so that the brakes could no longer be applied. Until the air line was broken, the brakes were working efficiently and were slowing down the car, but after it was broken, the motorman had no control over the movements of the car or the brakes. There was also evidence to the effect that air is necessary to operate the motor with the controller, and the car could not be reversed after the air pipe was broken. That one wheel of the truck was on the inside of one of the rails as the momentum of the train pushed the truck along the track until the truck turned over on its side and the train stopped with the truck wedged under its forward end, and was pulled out by another electric railway car. While the truck was being shoved along ahead of the train, deceased sat in the driver's seat of the truck uninjured, and holding to the steering wheel.

All of the foregoing evidence was applicable to the issues and was properly introduced and admitted, and, on proper request, the trial court should have given

2. instructions as to the law of contributory negligence in case the jury should find the decedent's own negligence was a proximate cause of his injury and death, and it ought not to have given any instructions withdrawing from consideration by the jury the evidence that decedent's own negligence proximately contributed to cause his death; nor should the jury have been told to find for the plaintiff, notwithstanding such contributory negligence, even though defendant could not have prevented the injury by any exercise of care on its part that was possible after decedent's contributory negligence had ceased to operate as a proximate cause. *Waters* v. *Indianapolis Traction, etc., Co.* (1916), 185 Ind. 526, 113 N. E. 289; *Terre Haute, etc., Traction Co.* v. *Stevenson* (1919), 189 Ind. 100, 106, 123 N. E. 785, 127 N. E. 3; *Southern Indiana, etc., Electric Co.* v. *Harrison* (1926), 85 Ind. App. 350, 151 N. E. 703.

Appellant complains of three instructions given by the court at plaintiff's request, insisting each of them violated the rule as above laid down. No. 4 was as follows:

"The negligence charged against the defendant in the amended second paragraph of complaint is that it run and operated its said train as it approached and ran onto said crossing in question at a high and dangerous rate of speed and by reason of said high rate of speed defendant was unable to stop said train after the collision and before said truck turned over and Charles O. Brunson was killed.

"If you shall find that the deceased Charles O. Brunson received no injuries which resulted in his death, by the immediate collision of said interurban car and the said truck driven by said Charles O. Brunson, but received his fatal injuries after the truck had been shoved ahead of the car about one hundred (100) feet and at or after the time the truck turned over, if you so find, then under the issues in the amended 2nd paragraph of complaint the acts and conduct of said Charles O. Brunson, when approaching and driving onto defendant's track at the place in question, it is not material as bearing upon the question of said Charles O. Brunson's contributory negligence, for if you find that said Charles O. Brunson was guilty of negligence in so driving said truck upon defendant's track in front of defendant's approaching car at said crossing, said negligence would not be a defense under the issues in the amended 2nd paragraph of complaint for the only negligence of said Charles O. Brunson which you can consider as a defense under the issues, in the amended 2nd paragraph of complaint is negligeace after the collision. And if you find that said Charles O. Brunson was guilty of no negligence after the immediate collision between defendant's car and said truck at said crossing which proximately contributed to his death, then you will find that said decedent, Charles O. Brunson, was guilty of no contributory negligence; and if you further find that defendant was guilty of

the negligence, if any, charged in the amended 2nd paragraph of complaint, and that said negligence, if any, was the proximate cause of the death of Charles O. Brunson, then your verdict should be for the plaintiff."

The purport of this instruction, as applied to the foregoing evidence, was that even though the collision may have been directly caused by the negligence of plaintiff's decedent in driving upon the railroad track immediately in front of a train which he saw approaching, and notwithstanding defendant's employees thereafter may have made every possible effort to stop the train by all means within their power and were unable so to do because of damage to their train by the collision, due to the breaking of machinery, of which decedent's negligence in getting upon the track was the direct cause, yet if defendant was negligent before the collision occurred in running its train at an unlawful rate of speed, the momentum of which carried the train forward under those circumstances, the contributory negligence of plaintiff's decedent was no defense. This was error. A party who was himself negligent can only recover for the negligence of another when the proximate cause of the injury was negligence of that other person, and his own negligence, even though it may have contributed thereto in some degree, was not really a proximate cause, because it ceased to operate as such cause before the injury was inflicted. *Terre Haute, etc., Traction Co.* v. *Stevenson, supra; Union Traction Co.* v. *Vatchet* (1921), 191 Ind. 324, 132 N. E. 591.

Instruction No. 6 was to the effect that even though the negligence of both plaintiff's decedent and defendant before the collision occurred had operated proximately to cause it, yet if decedent was not guilty of any further negligence after the collision had occurred which contributed to cause his fatal injury, the

verdict should be for plaintiff in case defendant had been negligent in running its car to a point near the crossing at such a high rate of speed that it could not be stopped after the collision until fatal injuries were inflicted on plaintiff, whatever degree of care and diligence defendant and its motorman may have used in an unsuccessful attempt to stop the car after a collision became imminent. This was error. If both parties were negligent at the same time, up to a moment before the collision, and both began exercising care at the same instant, and neither thereafter omitted anything he could do to avoid the threatening disaster, defendant's prior negligence cannot be deemed the sole proximate cause of an injury that followed the collision as a result of such negligence. Decedent's negligence, exactly contemporaneous in point of time with that of defendant, and which also had helped to cause the collision and create the situation of extreme danger, is held not to be a proximate cause of the injury for he, equally with defendant, ceased to be negligent at the moment of the collision. Such a condition is not within the doctrine of "antecedent and subsequent negligence," as declared in *Indianapolis Traction, etc., Co. v. Croly* (1911), 54 Ind. App. 566, 580, 96 N. E. 973, 98 N. E. 1091. There is no antecedent and subsequent negligence where both parties are negligent at the same time and both cease to be negligent at the same time, even though, as here, it may have taken a longer time for the effect of the negligence of the defendant to subside than that of the decedent.

Instruction No. 7, after stating that the third paragraph of the complaint charged that the motorman knew, from the time of the collision, that decedent was in great peril, but negligently failed to exercise due care to stop the train before the truck turned over and killed decedent, declared the law as follows:

"Under this paragraph of complaint the only issues for you to determine on the question of defendant's liability are, FIRST, was the motorman negligent as charged, and SECOND, was said negligence the proximate cause of decedent's death. Under this paragraph of complaint you will not consider the question of the negligence of Charles O. Brunson in approaching and driving onto defendant's track before and at the time of the collision, *nor his negligence after the collision, for contributory negligence is not a defense to the cause of action stated in the third paragraph of complaint.*" (Our italics.)

This instruction, as applied to the evidence on behalf of the defendant above set out, was misleading in several particulars: (1) It ignored the question whether or not a collision, caused, in part, by decedent's own contributory negligence, had so disabled the interurban car as to make the motorman unable, by the exercise of due care, to stop the train; (2) it withdrew from the consideration of the jury all questions as to decedent's contributory negligence having been a proximate cause (or even the sole proximate cause) of the collision, and as to such collision having made it impossible thereafter to stop the car by the use of the brake or other machinery; (3) it declared that even the contributory negligence, if any, of the decedent "after the collision," though it might have operated contemporaneously with the motorman's negligence as a proximate cause of such injury, was not a defense.

It is true that mere contributory negligence by a traveler continuing to drive toward and upon a railroad track without looking and is injured in a collision with a train, will not bar a recovery if the defendant actually knows that such negligent person is unconscious of danger or is otherwise unable to extricate

6, 7.

himself from the impending peril, and fails to use the means at hand and afforded opportunity, by the exercise. of reasonable care, to stop the train in time to avoid injuring him, such failure will be regarded as negligence of the defendant in not taking advantage of the "last clear chance" to avert the injury.   *Terre Haute, etc., Traction Co.* v. *Stevenson, supra; Southern R. Co.* v. *Wahl* (1925), 196 Ind. 581, 586, 149 N. E. 72.

But, as applied to evidence that decedent's own negligence had contributed to cause a collision by which defendant's train was so disabled that it could not afterward be operated or controlled, and that deceased sat in the driver's seat of his truck, uninjured, holding to the steering wheel, until the truck had been shoved 100 feet or more and overturned, defendant had the right to go to the jury on the issue, joined by its answer of general denial to the third paragraph, whether or not deceased's own negligence had proximately contributed to cause his injury.   And it was error for the court to withdraw that issue by giving an instruction that "contributory negligence is not a defense to the cause of action stated in the third paragraph of complaint."

Counsel for appellee cite and rely upon the cases of *Cleveland, etc., R. Co.* v. *Baker* (1920), 190 Ind. 633, 128 N. E. 836, and *Waters* v. *Indianapolis Traction, etc., Co.* (1916), *supra,* and those cases may tend to support the sufficiency of the third paragraph of the complaint, which alleges that the motorman saw and realized decedent's peril, but negligently failed to use his brake, and "negligently ran said car and shoved said truck ahead of said car until the truck turned over and thereby killed plaintiff's decedent."   But they do not support the rules of law as declared by the foregoing instructions.

In the Baker case, *supra,* the question on the evidence of whether or not those in charge of the moving cut of

cars exercised the care and prudence at their command, after the cars and automobile collided, to avoid injuring plaintiff, was one about which reasonable minds might well differ, and hence a dispute properly left to the jury. In that case, the locomotive was running backwards pushing a cut of cars, either by the engineer actively applying the power or no one at the throttle to control the power, which, when shut off, stopped the cars within a few feet, and it being questionable whether or not a watchman was on the front end of the advancing cars to give warning, were important factors. Therefore, whether, after the collision of the cars and automobile, the antecedent negligence of the plaintiff or the defendant had ceased to operate, and whether the injury to plaintiff was the direct result of intervening negligence of the defendant, uncontributed to by the plaintiff, were held questions of fact for the jury in determining the proximate cause of plaintiff's injuries.

In the Waters case, *supra*, the evidence was not brought up, and the decision rests upon the correctness of two instructions given by the court at the request of appellee. In that case, one paragraph was drawn upon the theory of the last clear chance doctrine, and conceded antecedent negligence of decedent in entering upon the track of the defendant, and it was held that the instruction was erroneous for the reason that it precluded a recovery under that paragraph, in that, it took from the jury the right to determine whether or not decedent was guilty of such contributory negligence as would bar a recovery. The other instruction was held erroneous for the reason that, according to the complaint, an ordinance of the city of Indianapolis, under which appellee was operating, required appellee to equip its cars with "the most approved life guards" which appellee had negligently failed to do in violation of the ordinance. The negligence charged was in the use of an insufficient fen-

der; but for which decedent's contributory negligence would have caused only a slight injury incident to falling on the fender.    But this instruction left the question of whether the fender was of a type "the most approved," and of the general standard contemplated by the ordinance, to the judgment and experience of appellee, when it should have been submitted to the jury.

In the present case, the court refused to submit the question as to whether or not the antecedent negligence of the plaintiff had ceased to operate as a contributing cause.

The other questions discussed by counsel may not arise when the case is again tried.

The judgment is reversed, with directions to sustain defendant's motion for a new trial.

Martin, J., not participating.